## COWEN v. BOSTON WOVEN HOSE & RUBBER CO.

(District Court, D. Massachusetts. June 13, 1914.)

No. 454

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PROCESS OF CLEANING RUBBER.

The Cowen patent, No. 642,814, for a process of cleaning rubber, or any similar or analogous substance, by reducing it to a plastic condition and forcing it under pressure through a strainer to remove foreign substances, is void for lack of patentable invention in view of prior patents for machines for forcing clay in a plastic condition through a strainer for the same purpose.

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MACHINE FOR CLEANING RUBBER.

The Cowen patent, No. 642,813, for a machine for cleaning rubber by forcing it in a plastic condition through a strainer, is limited to the described construction and arrangement of straining devices. As so construed, held not infringed.

In Equity. Suit by Emma R. Cowen against the Boston Woven Hose & Rubber Company. On final hearing. Decree for defendant.

Arthur L. Woodman, of Boston, Mass., for plaintiff.

William J. Sperl, of Boston, Mass., for defendant.

DODGE, Circuit Judge. This bill is brought by the present owner of United States patents 642,813 and 642,814, issued February 6, 1900, to Robert Cowen. The first patent is for an apparatus for cleaning rubber; the second for a process of cleaning rubber. The plaintiff is Cowen's widow and holds the patent by assignment from his administrator. She alleges infringement by the defendant of both patents. The defendant denies the validity of both.

It appeared from the plaintiff's uncontradicted evidence that before and at the time of his application, and from then until his death in 1902, Cowen was in the defendant's employ as its superintendent; that during the same period a process and apparatus for straining rubber, and said to have been patented by him, were introduced and used in the defendant's factory; and that the same process and apparatus for carrying it into effect have ever since been so used by it, without license or permission from Cowen or his representatives, or the payment of any royalty to him or them, so far as shown. Nor does any transfer of Cowen's rights in the inventions claimed, nor any contract regarding the patents between him and the defendant, appear to have been made. The defendant does not contend that it acquired any rights

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in his alleged inventions merely by virtue of the fact that he was in its employ as above.

The following statements are made in both patents:

"As is well known, rubber, whether it be the raw material or shoddy, etc., which it is desired to work over again is usually more or less filled with foreign substances, such as bark, dirt, pieces of wood, stones, etc., in the case of the raw rubber, and nails, pieces of buckles, straps, cloth, and various other foreign substances in the case of shoddy, etc. Heretofore the rubber has been cleansed of these foreign materials in various ways, the details of which it is not necessary to set forth herein further than to say that sometimes the rubber mass has been ground and dried and subjected to a blower which would separate the parts by gravity, and the metallic parts have been removed by being passed in front of magnets, while also the fibrous foreign matter has been removed by being eaten away by sulphuric acid. All the methods mentioned have, however, more or less objectionable features and are also tedious and expensive, and accordingly I have invented the hereindescribed apparatus, which accomplishes the desired object quickly and thoroughly and does it in a simple manner and at slight expense.

"Stated in general terms, my invention consists in means for reducing the rubber (whether in the form of raw or shoddy rubber or otherwise) to a plastic or partially-fluid condition and then straining it, thereby separating the foreign substances (nails, strings, bits of leather, bark, etc.) mechanically without in any wise deteriorating or damaging the rubber."

The plaintiff's uncontradicted evidence at the hearing was that prior to the filing of Cowen's application on April 1, 1899, the method used in the defendant's and in other rubber factories for removing foreign matter from the rubber was to reduce it, whether old rubber, scrap, or shoddy, to small pieces; to treat it in that condition with acid, thereby destroying any wood, bark, or fiber contained in it; and then to pass it in a series of rifles with water running through it, through or over magnets which detained any brass, steel, or iron particles. It was then devulcanized by heating until soft enough to work. This testimony supplemented the above statements quoted from the patents, without materially varying from them, except perhaps in one particular. According to the testimony, the patented process takes longer than the methods previously followed, but is superior in removing all foreign matter, whether metallic or not, more thoroughly and completely.

[1] It will be convenient to consider the process patent first (No. 642,814). The general terms in which the alleged invention is described have been quoted above. The patent has three claims: The first for reducing rubber to a plastic condition, then straining it under pressure; the second for reducing it to a plastic condition by heating and then straining it under pressure; the third for first macerating it, then reducing it to a plastic condition by heating, and then straining it under pressure..

By "plastic," it would seem from the quotation above made, is also to be understood "partially fluid." Later the patentee states that in carrying out his invention he first makes the rubber "plastic or sufficiently fluid to flow under pressure." And still later, in describing his machine (which he does in both patents), it is stated that, when it reaches the strainers after being heated, the rubber is "plastic like dough, just enough not to be inconveniently sticky."

The patentee, as has appeared, does not limit himself to any particular method of reducing the rubber to the plastic condition. Nor does he limit himself even to rubber; on the contrary, he expressly says that he intends to "include thereby any similar or analogous substance requiring substantially similar cleaning." And he does this because, as he states:

"I regard it as broadly new to clarify rubber by forcing it in a plastic condition, as described, through mechanical strainers, and accordingly I do not intend to limit my invention to any details otherwise than as expressed in the claims."

That there was nothing broadly new in removing foreign matter from a fluid or plastic substance by straining, I take to be of common knowledge. That there was anything broadly new in doing the same thing by forcing the fluid or plastic substance to be cleaned through mechanical strainers would be in any case hard to believe; but that there was not seems to me sufficiently shown by United States patents 4,676 to Miller & Roller, July 31, 1846; 73,921 to Norton, January 28, 1868; and 138,824 to Thompson, May 13, 1873—upon which the defendant relies. Each of the three covers a machine for forcing clay in a plastic state through a strainer, and in each the object or one of the objects to be attained was to remove foreign matter from the clay. If it was old thus to clean other plastic substances, I do not see how it can be said that there was invention in using the same method to clean rubber or substances similar or analogous thereto. Nothing new in principle or function is involved, and no object or result which can properly be called new is attained. Cowen does not and could not claim to have discovered either that rubber could be made fluid or plastic enough to be strained, nor how to make it so, whether by heat or otherwise; any more than he could claim to have discovered how to macerate it. For the purposes of his process patent, I must regard the rubber, or the similar or analogous substances referred to in it, merely as substances capable of being made fluid or plastic enough to be strained. No difficulty in straining, peculiar to them, is shown. Notwithstanding the presumption from the grant of this patent, I must hold it void as disclosing no patentable invention.

[2] It follows that the remaining patent, No. 642,813, covering Cowen's apparatus, does not describe a machine effecting any broadly new result, but is to be considered merely as a machine for mechanically straining rubber or other substances which are or can be made sufficiently plastic. The machine, as the patent states, has "some of the general characteristics of an ordinary tube machine." In it a spirally fluted conveyer rotates within a jacketed tubular chamber, the walls whereof are kept hot by steam or hot water circulating through the jacket. Into this the rubber is fed in pieces through a hopper, the conveyer forces these toward one end of the chamber, the heated walls of the chamber make them plastic as they proceed through it, and the pressure of the conveyer forces the rubber, when sufficiently plastic, through strainers arranged in that end of the chamber toward which the pressure is exerted.

The other patents above referred to make it clear that there was nothing new in employing, upon plastic material contained in a chamber, mechanical pressure to force it through a strainer, covering an exit from the chamber. United States Patent to Hoffman, No. 458,-754, September 1, 1891, describes a machine for employing mechanical pressure upon plastic material in general, contained in a chamber, to force it, not through a strainer, but through small apertures in the bottom of the chamber. Nor was there anything new in employing a spirally fluted conveyer rotating within a tubular jacket chamber, kept hot as described in the patent in suit, to force rubber, made or kept plastic by such heat, through a small tube-forming aperture at one end of the chamber. This was done by the machine described in United States patent to Vernon & John Royle, No. 325,363, September 1, 1885. The Royle machine did not purport to effect any straining of the rubber, but with the substitution of the strainer in place of its tube-forming aperture, I think it would be, for all material purposes, the same thing as the Cowen machine. So far as their combined operation is concerned, in making rubber plastic enough to be forced, and then in forcing it through restricted outlets at the end of the heater, Cowen's heater and conveyer did nothing that had not been done before. His invention, if any, must be found in the particular method of straining adopted in his machine. He is not entitled to cover broadly a foraminous strainer of whatever kind, in combination with his heater and conveyer.

It appears, from what his patent sets forth, that his strainer device is adapted to meet certain requirements considered by him as necessary for the accomplishment of his result. He states that "enormous pressure must be exerted" to force the rubber through the fine apertures of the diaphragm, and that it is mechanically impossible to make a properly apertured diaphragm capable of withstanding such pressure. He therefore employs a plate thick enough to withstand it, provides the plate with a number of holes, each of comparatively small diameter, and provides each hole with shoulders affording firm support for small and thin diaphragms constituting the active strainer surfaces. These, it is said, give the greatest strength if circular or disk-like in form. The ledges referred to are so arranged within their respective holes as to leave pockets on the inner side of the strainer-disks, below the surface of the plate, wherein foreign matter strained from the rubber may accumulate and be removed from time to time with the strainer-disk, when enough has accumulated thereon to clog its diaphragm. In order to facilitate such removal and cleaning, and permit it to be done with the least possible interference with the operation of the machine, the strainer plate is movably mounted in the machine, the walls whereof are provided with openings through which it may slide; and the plate is made oblong, so as to contain more than one set of diaphragm-carrying apertures, and so that, when one set becomes clogged and needs cleaning, it may be readily removed and another substituted for it by sliding the plate. Finally, a plurality of removable strainer plates is employed, one behind the other, and having successively finer strainer holes in the diaphragms carried; and the specification provides that

the outermost plate may be removed endwise of the machine. The above are the features covered by the seven claims of the apparatus patent.

The defendant contends that in view of the prior patents above mentioned and of United States patent to Madden, No. 446,873, February, 1891, describing a machine for molding separator plugs for battery elements, one feature whereof is a slidable loader plate containing perforations through which plastic material is forced, every feature described and claimed in the apparatus patent in suit is either anticipated or is merely an adaptation of old and familiar devices involving only ordinary mechanical skill. These contentions seem to me by no means without force; but the defendant offered no testimony directly supporting them, and its evidence consists only of the prior patents relied on. I do not think I am warranted, merely by what they disclose, in holding the apparatus patent void as against the presumption created by its issue. I think it clear, however, that it cannot be extended in its scope beyond Cowen's described construction and arrangement of strainer devices, and I must hold that the defendant infringes only so far as it has used or is using these. The plaintiff's evidence would seem to indicate that the defendant is not now using in any of its machines the precise straining device described in the patent in suit. It does indicate that on four of the machines the defendant now uses a strainer fixture described and shown on the fourth page of a circular marked "Complainant's Exhibit D," and manufactured by Edred W. Clark, of Hartford, Conn., is used. I am unable, for the reasons stated, to hold this device an infringement of Cowen's patent. It is neither Cowen's strainer device, nor sufficiently like Cowen's to be called an infringement. As to the strainer device now used on the defendant's other machines, one of them was produced at the hearing, but not very fully or satisfactorily described in the testimony. It consisted of three parts, marked "A1," "A2," "A3," respectively. It has no sliding plate containing more than one set of apertures, so that in no event does it infringe claims 5 or 6. Nor is there found in it the plate containing holes with shoulders, each supporting a small strainer diaphragm, called for by the other claims. That the defendant has at any time since February 6, 1900, used other strainer devices more nearly resembling those described and claimed by Cowen, there is nothing to show. In the view of the patent which I have taken, I am unable to find sufficient proof of infringement.

The bill must therefore be dismissed, with costs.